UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GARY LABARBERA and FRANK FINKEL,
Trustees of Local 282 International
Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training and
Vacation Sick Leave Trust Funds,

                    Plaintiffs,              REPORT AND
                                                                                                                                         RECOMMENDATION

   -against-

                                                                                                                  07 CV 2051 (ENV)(RML)

MODERN CONTINENTAL
CONSTRUCTION CO., INC.,

                   Defendant.
----------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated July 27, 2007, the Honorable Eric N. Vitaliano, United States District Judge, referred plaintiffs' motion for entry of a default judgment to me to conduct a damages inquest and issue a report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted in part and denied in part, with leave granted to file additional documentation within 30 days. As to the portions of plaintiffs' motion that should be granted, I recommend that they be awarded a total of $68,610.86, plus interest on $34,398.24 in unpaid contributions.

## BACKGROUND AND FACTS

        Plaintiffs Gary LaBarbera and Frank Finkel ("plaintiffs") brought this action in May 2007 under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and the Taft-Hartley Act, 29 U.S.C. § 185, *et seq*. Plaintiffs are trustees of the Local 282 International Brotherhood of Teamsters ("Local 282") Welfare, Pension, Annuity, Job Training, and Vacation Sick Leave Trust Funds (the "Funds"), which are

jointly administered multi-employer benefit plans. (Complaint, dated May 16, 2007 ("Compl."), ¶¶ 2, 3.)

Defendant Modern Continental Construction Co., Inc. ("Modern Continental" or "defendant") is a corporation that maintains its principal place of business in Cambridge, Massachusetts. (Id. ¶ 6.) The subject matter of this action arises out of business that Modern Continental conducted within the State of New York. (Id.) After defendant failed to appear in this action, Judge Vitaliano referred plaintiffs' motion for a default judgment to me for an inquest on damages. By order dated August 8, 2007, I directed the parties to file written inquest submissions. Plaintiffs had previously filed an inquest submission dated June 22, 2007, but defendant failed to respond. (See Affirmation of Avram H. Schreiber, Esq., dated June 22, 2007 ("Schreiber Aff.").) On September 21, 2007, plaintiffs filed a Supplemental Affirmation to address additional damages that it incurred since the filing of the suit and to reflect a late contribution payment made by defendant. (See Supplemental Affirmation, dated Sept. 21, 2007 ("Supp. Aff.").)

Plaintiffs have demonstrated that defendant was properly served with the Summons and Complaint by service on the Secretary of State on May 21, 2007. (See Affidavit of Maria Schmitz, sworn to May 21, 2007.) In addition, a Clerk's Certificate confirms that defendant has not filed an answer or otherwise moved with respect to the complaint, and that the time to do so has expired. (See Clerk's Certificate, dated June 22, 2007.) I therefore recommend that plaintiffs' motion for a default judgment be granted.

It is well-settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176,

181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). "While the default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." LaBarbera v. Golden Vale Const. Group, No. 06 CV 00813, 2007 WL 2071565, at *3 (E.D.N.Y. July 17, 2007) (quoting Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan.25, 1993)) (citation omitted). Plaintiffs' allegations are as follows:

From July 1, 2002 through June 30, 2009, defendant has been and will continue to be bound to a Collective Bargaining Agreement ("CBA") with Local 282, pursuant to which defendant is required to pay contributions to the Funds. (Schreiber Aff. ¶¶ 9, 10, Exs. B, C.) Defendant is bound to the CBA by virtue of its membership in the General Contractors Association of New York ("the Association").[1] (Id., Ex C at 2.) In 2006, Local 282 and the Association entered into a Memorandum of Agreement ("the Agreement"), effective July 1, 2006, which extended the coverage of an existing CBA to June 30, 2009, subject to certain listed changes.[2] ( Id., Ex. B.)

Section 13(g) of the CBA states that an employer is bound by the provisions in the Restated Agreement and Declaration of Trust (the "Declaration"). (Id. ¶ 13, Ex. D at 19.) Pursuant to Article IX, Section 1(b) of the Declaration, employers are required to pay

---

[1] It should be noted that "Modern Continental Construction, Inc." does not appear on the membership list of the Association, but "Modern Continental Companies Inc." does appear.

[2] The previous CBA was in effect from 2002 to 2006. (Schreiber Aff. ¶ 9, Ex.D.)

3

contributions to the Funds 45 days after the close of each calendar month. (Id., Ex. D at 27.) Article IX, Section 3 of the Declaration states that any Employer who has not made the required payments within five working days of the due date shall be obligated to pay interest, attorney's fees, auditors fees and liquidated damages. (Id., Ex. E at 30.) Pursuant to Article IX, Section 1(d) of the Declaration, the Trustees may, at any time, audit the books and records of any employer bound by the CBA. (Id., Ex. E. at 27-28.)

According to plaintiffs, defendant failed to remit fringe benefit contribution payments for the period of October 1, 2004 through September 30, 2005 and was late in doing so for the periods of October and December of 2006. (Id. ¶ 15.) Additionally, plaintiffs assert that defendant was late in making contribution payments for the periods of March, April, May, June, and July of 2007. (Id. ¶¶ 21, 22; Supp. Aff. ¶ 5.) According to plaintiff, the total amount due, including principal contributions, interest through September 21, 2007, liquidated damages, auditor's fees, and attorney's fees, is $105,644.08. (Supp. Aff. ¶ 21.)

## DISCUSSION

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due." Trustees of the Bldg. Servs. 32B-J, Pension, Health and Annuity Funds v. Linden Realty Assocs., No. 94 CV 1358, 1995 WL 302454, at *4 (E.D.N.Y. May 8, 1995) (citing Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310 (2d Cir. 1990); Berry v. Garza, 919 F.2d 87 (8th Cir. 1990); Winterrowd v. David Freedman & Co., 724 F.2d 823 (9th Cir. 1984)). Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), authorizes the Funds to recover:

4

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of -
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Section 1332(g) thus creates a mandatory right to interest, liquidated damages, and attorney's fees "in any case in which a judgment in favor of the plan is awarded." Trustees of the Bldg. Servs. 32B-J, Pension, Health and Annuity Funds, 1995 WL 302454, at *7; see also DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1039 (E.D.N.Y. 1993) (citing Benson, 726 F. Supp. at 36; McDonald v. Centra, Inc., 946 F.2d 1059, 1065 (4th Cir. 1991); Michigan Carpenters Council v. C.J. Rogers, Inc., 933 F.2d 376 (6th Cir. 1991); Idaho Plumbers and Pipefitters v. United Mechanical Contractors, Inc., 875 F.2d 212, 215 (9th Cir. 1989)).

    A. <u>October 1, 2004 - September 30, 2005</u>

On September 14, 2005, plaintiffs hired an accounting firm to conduct an audit of defendant's payroll records and other related data. (Schreiber Aff. ¶ 18.) The audit covered the period of October 1, 2004 through September 30, 2005. (Id.) The auditors found that, for this period, defendant owes the following in principal contributions:

| Fund | Principal Amount Due |
|---|---|
| Welfare Trust | $5,752.50 |
| Pension Trust | $3,742.00 |
| Annuity Trust | $18,100.79 |

5

| | |
|---|---|
| Job Training Trust | N/A[3] |
| Vacation Trust | $6,802.95 |
| Total | $34,398.24 |

(See id., Ex G.)  I have reviewed these calculations and find them accurate.  I therefore respectfully recommend that plaintiffs be awarded $34,398.24 in unpaid contributions for this period.

Plaintiffs also seek interest, liquidated damages and auditors' fees for this period. (Id. ¶ 18.)  Interest on unpaid contributions is determined by using the rate provided under the plan, or if none, "the rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  Here, the Agreement provides for a rate of interest.  Pursuant to an amendment to the Declaration on October 29, 2003, the applicable interest rate is 18% per annum, or .05% per day.  (Schreiber Aff. ¶ 17, Ex. F.)  Plaintiffs calculated interest for each unpaid contribution through May 1, 2006.  (Id. ¶ 18.)  However, because interest continues to accrue on all outstanding principal through the date of entry of judgment, I cannot recommend a specific interest award at this time.  Instead, I respectfully recommend that interest be awarded on the unpaid contributions at the rate of 18% per annum through the date of entry of judgment.

Pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii), plaintiffs are also entitled to liquidated damages "in an amount not in excess of 20 percent" of the principal amount due.  Plaintiffs calculate that amount accurately as $6,879.65, and I therefore respectfully recommend that plaintiffs be awarded this amount in liquidated damages.

---

[3] The letter reflecting the auditors' findings indicates a negative number for the amount found to be deficient from the Job Training Trust Fund.  However, plaintiffs appear to have ignored this in stating the total outstanding principal from the audit period.  (See id. ¶ 18.)

Finally, plaintiffs seek to recover for audit fees, pursuant to Article IX, Section 3 of the Declaration. This provision states that employers shall be responsible for auditor's fees. (Id., Ex. E at 30.) Plaintiffs have submitted documentation showing that the audit cost $3,720.00. (See id., Ex. G.) I therefore recommend that plaintiffs be awarded this amount in audit fees.

Based on the foregoing, I respectfully recommend that plaintiffs be awarded a total of $44,997.98, plus applicable interest, for the period of October 1, 2004 through September 30, 2005.[4]

B. October and December 2006 & March and April 2007

Plaintiffs allege that for the weekly periods of October and December 2006 and March and April 2007, defendant was late in its submission of remittance reports and payments. (Id. ¶¶ 19, 20, 21, 23.) Thus, plaintiffs seek delinquency charges, consisting of daily interest and liquidated damages for these periods. (Id.) Plaintiffs seek a total of $12,420.77 in delinquency charges for the 2006 periods, and $7,859.40 for the 2007 periods. (See id., ¶¶ 19, 20, 21, 23.) However, plaintiffs have not provided copies of the remittance reports or other documentation which would allow the court to review the accuracy of its damage calculations. Therefore, I respectfully recommend that plaintiffs' claims as to these periods be denied without prejudice. I further recommend that plaintiffs be granted leave to file the documentation necessary to allow the court to review the accuracy of these calculations within 30 days.

---

[4] Plaintiffs are only entitled to interest on the unpaid principal, $34,398.24.

C. May and June 2007

Plaintiffs further allege that for the weekly periods of May and June 2007, defendant was again late in its submission of remittance reports and payments. (Supp. Aff. ¶¶ 11, 16.) Thus, plaintiffs seek a total of $11,725.17 in delinquency charges for these periods.[5] (See id.) Unlike the periods discussed above, for these periods, plaintiffs have submitted remittance reports that allow the court to review the accuracy of the calculated damages. (Id., Exs. B, C.) However, unexplained discrepancies exist between the figures stated in the Supplemental Affirmation and those suggested by the remittance reports.

For May 2007, plaintiffs assert that defendant submitted a payment of $27,390.61 on July 2, 2007. (Id. ¶ 16.) However, upon review of the attached remittance report for May 2007, it appears that defendant made payments totaling $34,238.26 to the Funds.[6] (See id., Ex. B.) For June 2007, plaintiffs assert that defendant submitted a payment of $26,964.86 on August 20, 2007. (Id. ¶ 11.) However, upon review of the attached remittance report for June 2007, it appears that defendant made payments totaling $20,117.21 to the Funds.[7] (See id., Ex. C.) As delinquency charges are based upon the principal contributions for a given period, these unexplained discrepancies make the plaintiffs' calculations for these periods inaccurate, albeit slightly.

---

[5] Plaintiffs understate the total June 2007 damages by $30.00. (See id. ¶¶ 11, 12.)

[6] The figure $34,238.26 represents the sum of the payments made to the Local 282 Welfare, Pension, Annuity, Job Training and Vacation/Sick funds according to the May 2007 remittance report. As plaintiffs have not asserted that they represent the "Heavy Constr Ind Fund," which also appears on this remittance report, the amount defendant paid to this fund is not included in these calculations.

[7] This figure, again, does not include payment made to the "Heavy Constr Ind Fund."

8

Notwithstanding the discrepancies in the Supplemental Affirmation, I have conducted independent calculations for these periods using the figures contained in the corresponding remittance reports. Based on these calculations, I respectfully recommend that plaintiffs be awarded a total of $11,660.11 in delinquency charges for these periods.[8]

D. July 2007

The final periods included in plaintiffs' current action are the weekly periods of July 2007. According to plaintiffs, defendant filed its remittance reports and submitted its contribution payments 35 days after they were due. (Id. ¶ 13.) Plaintiffs seek a total of $4,612.48 in delinquency charges for this period. (Id.) I have reviewed the remittance report and find this figure accurate. Therefore, I respectfully recommend that the plaintiffs be granted $4,612.48 in delinquency charges for this period.

E. Attorney's Fees and Costs

As the prevailing party, plaintiffs move pursuant to 29 U.S.C. § 1132(g)(2)(D) for attorney's fees and costs. Plaintiffs support their fee request with contemporaneous time records. (Schreiber Aff., Ex. H; Supp Aff., Ex. E.)[9]

"The determination of a reasonable fee award under Section 1332(g)(2)(D) of ERISA lies within the sound discretion of the district judge." Meehan v. Gristede's Supermarkets, Inc., No. 95 CV 2104, 1997 WL 1097751, at *5 (E.D.N.Y. Sept. 25, 1997)

---

[8] Altogether, plaintiffs' inaccurate statement of the principal defendant paid for these periods had the effect of inflating the total interest by $65.02.

[9] In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying "relevant dates, time spent and work done." Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 661 (S.D.N.Y. 1996).

9

(internal quotes and citation omitted); see also Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). In calculating a "reasonable" fee award, the court must first establish a reasonable hourly rate, which is "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007). Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir. 1997). The party seeking fees then bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz, 34 F.3d at 1160 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

Here, I find plaintiffs' counsel's average hourly rates of $218 for an experienced attorney admitted in 1969, $168 for an attorney admitted in 2004, and $80 for a paralegal reasonable and in line with rates awarded in this area to counsel with comparable experience.[10] See, e.g., LaBarbera v. D & R Materials, Inc., No. 06 CV 2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007) (finding rate of $340 per hour reasonable in default ERISA case); King v. STL Consulting, LLC., No. 05 CV 2719, 2006 WL 3335115, at *7-8 (E.D.N.Y. Oct. 3, 2006) (awarding fees for Mr. Schreiber's time in a default ERISA case at the rate of $275 per hour).

As for the number of hours expended, courts uphold fee requests in ERISA cases when they determine that such fees are "reasonable." See Rivera v. Benefit Trust Life Ins. Co.,

---

[10] Portions of the experienced attorney's time were billed at $70 per hour and other portions at $275 or $300 per hour, with an average rate of a little over $218 per hour. Portions of the associate's time were billed at $80 per hour, $200 per hour and $225 per hour, with an average rate of a little over $168 per hour. The paralegal's time was consistently billed at $80 per hour. (See Schreiber Aff. ¶ 25; Supp. Aff. ¶ 19.)

921 F.2d 692, 698 (7th Cir. 1991). "The number of hours spent on litigation and the staffing pattern utilized is unreasonable if it is excessive, redundant or otherwise unnecessary." Bourgal v. Atlas Transit Mix, No. CV-93-0569, 1996 WL 75290, at *7 (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 150 F.R.D. 29, 35 (E.D.N.Y. 1993)). Plaintiffs' counsel expended a total of 41.84 hours on this case and is seeking $7,194.66 in attorney's fees. (See Schreiber Aff., Ex. H; Supp. Aff., Ex. E.) Counsel's work on this case included drafting and editing the complaint, conducting legal research, drafting correspondence, and preparing default judgment submissions.

      I find the 41.84 hours excessive. Although portions of this case, such as calculating damages and interest, were somewhat time consuming, this was mostly a straightforward and routine ERISA matter. This motion is unopposed, the activities reflected on the docket sheet are not complex, and many of the tasks listed on the time sheets were duplicative. See Del Turco v. Taylor Tile Co., Inc., No. 03 CV 5543, 2007 WL 2581882, at *6 (E.D.N.Y. Aug. 6, 2007).[11] Morever, plaintiffs' filings in this case are incomplete and contain discrepancies. As discussed above, plaintiffs failed to include remittance reports for four of the periods for which it is seeking damages. Additionally, the Supplemental Affirmation contains simple arithmetical errors which caused the court to expend its own time to calculate damages accurately.

      Where, as here, the application for fees is voluminous, the court may order an across-the-board percentage reduction in compensable hours. In re "Agent Orange" Products

---

[11] See also LaBarbera v. Liepper & Sons, Inc., No. CV-06-137, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.17 hours reasonable in ERISA default judgment case).

11

Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (explaining that "the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'") (quoting New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)); see also United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a percentage reduction of total fee award to account for vagueness in documentation of certain time entries). I find a five percent reduction in plaintiffs' counsel's billing records sufficient to account for some errors in the filings, the unexplained discrepancies, and some duplicative and excessive work. See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998); Bridges v. Eastman Kodak, 91 Civ. 7985 (RLC), 1996 WL 32325, at *6 (S.D.N.Y. Jan. 26, 1996). Accordingly, I recommend a fee award of $6,834.93.

Plaintiffs also seek costs in the amount of $505.36. (See Schreiber Aff., Ex. H; Supp Aff., Ex. E.) A court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citation omitted). "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead." New York State Nat'l Org. for Women v. Terry, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990), aff'd in part, rev'd in part on other grounds, 961 F.2d 390 (2d Cir. 1992), cert. granted, judgment rev'd on other grounds sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan), 507 U.S. 901 (1993). Here, the expenditures are for filing fees, service of process, and some postage and photocopying, and I find the amount reasonable. I therefore respectfully recommend that plaintiffs be awarded $505.36 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs be awarded a total of $68,610.86 plus appropriate interest, as detailed above. This figure encompasses principal contributions, liquidated damages, audit fees, delinquency charges, attorney's fees and costs. I further recommend that plaintiffs be granted leave to file the remittance reports necessary to review their calculations for October and December 2006 and for March and April 2007 within 30 days. Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Vitaliano and to my chambers, within ten (10) business days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: Brooklyn, New York
March 19, 2008

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge